UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| | ) | |
| CATARINO COS CASTRO, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID T. WESLING, *Field Office* | ) | |
| *Director of Enforcement and Removal* | ) | |
| *Operations, Boston Field Office,* | ) | |
| *Immigration and Customs* | ) | |
| *Enforcement;* MARKWAYNE | ) | No. 26-cv-274-JJM-PAS |
| MULLIN, *Secretary, U.S. Department* | ) | |
| *of Homeland Security;* TODD | ) | |
| BLANCHE, *Acting U.S. Attorney* | ) | |
| *General;* MICHAEL NESSINGER, | ) | |
| *Warden of Wyatt Detention Facility;* | ) | |
| and TODD LYONS, *Acting Director of* | ) | |
| *U.S. Immigration and Customs* | ) | |
| *Enforcement,* | ) | |
|     Respondents. | ) | |
| | ) | |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Catarino Cos Castro brings this habeas petition under 28 U.S.C. § 2241,
arguing that Immigration and Customs Enforcement ("ICE") acted unlawfully when
the agency revoked his Order of Supervision ("OSUP" or "supervised release") and re-
detained him at the Donald W. Wyatt Detention Facility in Central Falls, Rhode
Island. ECF No. 1. He seeks immediate release from ICE custody, as well as an order
restoring him to his prior OSUP. *Id.* at 12. The Government opposes Mr. Cos Castro's
petition, claiming that ICE properly revoked his OSUP. ECF No. 5. For the reasons

that follow, the Court GRANTS Mr. Cos Castro's petition and ORDERS his immediate release, subject to the conditions of his preexisting OSUP.

## I.   BACKGROUND

Mr. Cos Castro is a citizen of Guatemala. ECF No. 1 at 2. He first arrived in the United States in 2010, but he was apprehended at the southern border by immigration authorities, detained for about a week, and then put in expedited removal proceedings.[1]   *Id.* at 5.   He was removed from the United States on September 27, 2010. ECF No. 5-1 at 2.

Mr. Cos Castro then returned to the United States on or about April 25, 2019, at which point he was detained again. ECF No. 1 at 5; ECF No. 5-1 at 2. Officials from the Department of Homeland Security ("DHS") issued Mr. Cos Castro a Notice of Intent/Decision to Reinstate Prior Order, which reinstated his 2010 Expedited Removal Order. *See* ECF No. 5-1 at 2. However, on April 27, 2019, Mr. Cos Castro was released from custody on an Order of Supervision. *Id.* at 3.

Mr. Cos Castro remained on supervised release for the next seven years. ECF No. 1 at 5. During that time, Mr. Cos Castro complied with all of the conditions of his release and attended regular check-ins with ICE. *Id.*

---

[1] Noncitizens who, within fourteen days of arriving in the United States, are encountered by immigration officials within 100 air miles of a land border are subject to expedited removal. *See Carvalho de Andrade v. Nessinger*, No. 26-cv-183-JJM-AEM, 2026 WL 925648, at *3 (D.R.I. Apr. 6, 2026). This means that they are "ordered removed 'without further hearing or review.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(b)(1)(A)(i)).

Then, on April 28, 2026, Mr. Cos Castro appeared for a check-in at ICE's Boston Field Office in Burlington, Massachusetts. *Id.* at 1. During that check-in, ICE officers informed Mr. Cos Castro that his supervised release had been revoked, and they took him into custody. *Id.* at 5. He was later transferred to the Donald W. Wyatt Detention Facility in Central Falls Rhode Island, where he currently remains detained. *Id.* at 1.

Mr. Cos Castro filed the instant petition on May 4, 2026. *Id.* He requests that the Court order his immediate release on the grounds that ICE failed to comply with its own regulations and violated his due process rights in the process of revoking his supervised release. *Id.* at 10-12. The Government objects to Mr. Cos Castro's petition, arguing that his supervised release was properly revoked. ECF No. 5 at 4-8.

## II.    DISCUSSION

As noted, Mr. Cos Castro is subject to a reinstated order of removal. *See* ECF No. 5-1 at 2 (displaying Mr. Cos Castro's "Notice of Intent/Decision to Reinstate Prior Order"). Under 8 U.S.C. § 1231(a), "Congress has created an 'expedited removal process' for noncitizens who reenter the United States unlawfully after having previously been removed." *G.P. v. Garland*, 103 F.4th 898, 900 (1st Cir. 2024) (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 529-30 (2021). This provision of the Immigration and Nationality Act ("INA") authorizes DHS to reinstate a prior order of removal against a noncitizen who has been found to have reentered the United States without authorization after having previously been removed pursuant

to a removal order. *See* 8 U.S.C. § 1231(a)(5); *see also Cruz v. Bondi*, No. 25-cv-262-JJM-PAS, 2025 WL 3295485, at *1 (D.R.I. Nov. 26, 2025). Once the prior order has been reinstated, DHS must remove the noncitizen within a 90-day "removal period."[2] *Guzman Chavez*, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(A)).

Generally, if the noncitizen is not removed during the 90-day removal period, then they "shall" be released "subject to supervision under regulations prescribed by the [DHS Secretary]."[3] 8 U.S.C. § 1231(a)(3). There are two regulations, 8 C.F.R § 241.4(*l*) and 8 C.F.R. § 241.13(i), that "govern ICE's decision to revoke supervised release once it has been issued." *Bulle v. Wesling*, No. 26-cv-019-JJM-AEM, 2026 WL 183840, at *1 (D.R.I. Jan. 23, 2026).

The Government contends that ICE followed the procedures set forth in 8 C.F.R § 241.4(*l*) when the agency revoked Mr. Cos Castro's supervised release. *See* ECF No. 5 at 6. However, this regulation "appl[ies] only where release was based on a determination 'that the [noncitizen] would not pose a danger to the public or a risk of flight' rather than 'the likelihood of the [noncitizen's] removal in the reasonably foreseeable future.'" *Phommachak v. Wesling*, 816 F. Supp. 3d 201, 213 (D. Mass. 2026) (quoting 8 C.F.R. § 241.13(b)(1)).

---

[2] Noncitizens are typically subject to mandatory detention during the 90-day removal period. *See Guzman Chavez*, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)). In this case, it is not clear why DHS chose to release Mr. Cos Castro from detention on April 27, 2019, which is the same day he was issued his reinstated order of removal. *See* ECF No. 5-1 at 2-3.

[3] Though the statute refers to the "regulations prescribed by the Attorney General," this authority now belongs to the DHS Secretary. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 n.3 (2020) (explaining that 6 U.S.C. § 251(2) transferred the authority over "[t]he detention and removal program" to DHS).

It is unclear from the record whether Mr. Cos Castro's release on an OSUP was based on a determination that he would not pose a flight or danger risk, or if it was instead based on his removal being unlikely to occur in the reasonably foreseeable future.[4]   In any event, this Court has previously held that 8 C.F.R. § 241.13(i) specifically applies to those noncitizens who have been re-detained by ICE "after they have been 'issued a final order of removal, detained, and subsequently released on an OSUP.'" *Bulle*, 2026 WL 183840, at *1 (quoting *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)); *see also Deng v. Nessinger*, No. 26-cv-113-JJM-AEM, 2026 WL 643198, at *3 (D.R.I. Mar. 9, 2026).  The Court assumes that 8 C.F.R. § 241.13(i) also applies to Mr. Cos Castro as a noncitizen who has been issued a reinstated order of removal.  *See Lattab v. Ashcroft*, 384 F.3d 8, 14 (1st Cir. 2004) ("[A]n order reinstating a prior removal order is 'the functional equivalent of a final order of removal.'" (quoting *Arevalo v. Ashcroft*, 344 F.3d 1, 9 (1st Cir. 2003))).

8 C.F.R. § 241.13 provides that ICE may revoke a noncitizen's supervised release if "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).[5]  The First Circuit has provided ICE with

---

[4] Neither of the parties have submitted the OSUP itself.  It looks something like this.  *See* Dep't of Homeland Sec., U.S. Immigr. & Customs Enf't, Order of Supervision,           https://www.ice.gov/doclib/detention/checkin/I_220B_OSUP.pdf [https://perma.cc/BFX6-QHW8] (last visited May 8, 2026).

[5] Another regulation permits ICE to revoke a noncitizen's supervised release if he "violates any of the conditions of release." 8 C.F.R. § 241.13(i)(1).  However, the Government does not contend that Mr. Cos Castro violated any of the conditions of his release.  Indeed, Mr. Cos Castro was brought into custody as he was fulfilling one

four key elements that it must meet in order to re-detain a noncitizen, like Mr. Cos Castro, pursuant to this regulation: "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)).

A reviewing court, such as this one, is not permitted to make the individualized finding in the first instance; rather, it must review the finding "in light of the regulations instructing ICE on how it should make such a determination." *Id.* at 620 (citing 8 C.F.R. §§ 241.13(f), (i)(2)). The burden is on the Government to show that the noncitizen's removal is significantly likely to occur in the reasonably foreseeable future. *See Hall v. Nessinger*, No. 25-cv-667-JJM-PAS, 2026 WL 18583, at *7 (D.R.I. Jan. 2, 2026) (collecting cases).

It is clear from the facts of this case that ICE has failed to meet this burden. In its Notice of Revocation of Release, the only justification that ICE gave for revoking Mr. Cos Castro's supervised release was that: "It is appropriate to enforce the removal order entered against [Mr. Cos Castro] as ICE has the ability and means to effectuate [Mr. Cos Castro's] removal." ECF No. 5-1 at 3. One would assume that, once ICE has promised that it "has the ability and the means to effectuate" a noncitizen's removal from the United States, that it would be ready to do just that and that it would be capable of assuring a reviewing court that its process is complete.

---

of the conditions of his release, which was appearing for a check-in with ICE. *See* ECF No. 1 at 1.

6

But in the very next line of its Notice, ICE concedes that it "is seeking a travel document to effect [Mr. Cos Castro's] expeditious removal to Guatemala." *Id.* That ICE is still seeking[6] this document but has not actually obtained it is ultimately fatal to the Government's case.

For one thing, this fails to show the Court that Mr. Cos Castro's "removal has become significantly likely in the reasonably foreseeable future." *Kong*, 62 F.4th at 619-20. The Government has given the Court absolutely nothing by which to gauge how long the travel-document process will take and, consequently, how long Mr. Cos Castro will have to sit in an ICE detention facility while he waits for that travel document to arrive. *See, e.g.*, *Deng*, 2026 WL 643198, at *4; *Nguyen v. Lyons*, No. 25-cv-631-MSM-PAS, 2026 WL 125093, at *4 (D.R.I. Jan. 16, 2026) ("The Respondents have presented nothing from which this Court can even begin to estimate the length

---

[6] Over the past few months, much ink has been spilled by the federal courts of appeals over the precise definition of the word "seeking," particularly in the immigration context. *See, e.g.*, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. 2026); *Cunha v. Freden*, No. 25-3141-pr, --- F.4th ----, 2026 WL 1146044, at *6 (2d Cir. Apr. 28, 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, --- F.4th ----, 2026 WL 1223250, at *11-12 (7th Cir. May 5, 2026); *Hernandez Alvarez v. Fed. Det. Ctr. Mia.*, Nos. 25-14065, 25-14075, --- F.4th ----, 2026 WL 1243395, at *7 (11th Cir. May 6, 2026). However, at least three of those courts agree that the word "seeking" is a present participle that implies that the person doing the seeking is actively engaged in that activity. *Cunha*, 2026 WL 1146044, at *6 (explaining that "seeking" is the present participle form of "seek," which means, *inter alia*, "to try to acquire or gain; aim at" or "to make an attempt"); *Castañon-Nava*, 2026 WL 1223250, at *11-12 (defining "seeking" as the present participle form of "seek," which means, *inter alia*, "to make an attempt," "to try to obtain," or "to make an inquiry"); *Hernandez Alvarez*, 2026 WL 1243395, at *7 (defining "seeking" as the present participle form of "seek," which "underscores that it is describing some active and temporally ongoing step or process").

of time the document processing may take."); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at \*4 (E.D. Cal. July 16, 2025) ("Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance.").

That Mr. Cos Castro's removal remains a work in progress also falls woefully short of constituting "changed circumstances" so as to justify the revocation of his supervised release and subsequent re-detention.   *Kong*, 62 F.4th at 619-20. "Preparing to change circumstances is different from 'changed circumstances.'" *Nguyen*, 2026 WL 125093, at \*4; *see also Bulle*, 2026 WL 183840, at \*8 (finding the Government's assertion that it is "actively working to obtain travel papers" for a noncitizen's removal to a third country to be insufficient to justify his re-detention); *Lu v. Joyce*, No. 2:26-cv-00041-SDN, 2026 WL 352447, at \*3 (D. Me. Feb. 9, 2026) (finding insufficient the Government's assertion that a noncitizen's "document request is pending with the Chinese government" so as to constitute "changed circumstances"); *Aguilar v. Noem*, No. 25-cv-03463-NYW, 2025 WL 3514282, at \*6 (D. Colo. Dec. 8, 2025) (rejecting the Government's claim of "changed circumstances" on the mere basis that ICE is "pursuing third country removal options").

As such, the Court finds that ICE has failed to comply with 8 C.F.R. § 241.13(i)(2).  The agency cannot point to any changed circumstances in Mr. Cos Castro's case, and it has not established that his removal is significantly likely to occur in the reasonably foreseeable future.  *See Kong*, 62 F.4th at 619-20.

The Court therefore finds ICE's revocation of Mr. Cos Castro's supervised release and his subsequent re-detention to be unlawful.  Mr. Cos Castro shall be immediately released from custody, subject to the conditions of his preexisting Order of Supervision.  *See Nguyen*, 788 F. Supp. 3d at 153 (ordering similar relief); *Hall*, 2026 WL 18583, at *9 (same); *Bulle*, 2026 WL 183840, at *9 (same); *Deng*, 2026 WL 643198, at *5 (same).

### III.   CONCLUSION

For these reasons, the Court GRANTS Mr. Cos Castro's habeas petition.  ECF No. 1.  The Government is hereby ORDERED to **release Catarino Cos Castro immediately**, and he shall be subject to the conditions of his preexisting Order of Supervision.

Per its request, the Government is permitted to transfer Mr. Cos Castro to ICE's Boston Field Office in Burlington, Massachusetts for the sole purpose of processing his release and allowing for any return of property.  ECF No. 5 at 8 n.33. The Government also asks the Court to permit it to place "any monitoring equipment deemed appropriate."  *Id.*  Because Mr. Cos Castro is subject to the conditions of his preexisting OSUP, and there is no indication that monitoring equipment was placed on him as part of that preexisting OSUP, this part of the Government's request is DENIED.  Effectuating Mr. Cos Castro's transfer to Burlington shall not in any way impede his **immediate release**.

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

May 8, 2026